IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MELISSA ANN GONZALES,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:26-cv-1343<br><br>DISTRICT JUDGE<br>JAMES R. KNEPP II<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Melissa Gonzales filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court reverse and remand the Commissioner's decision.

**Procedural history**

In September 2023, Gonzales filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of

January 1, 2020.[1] Tr. 15, 258. In her applications, Gonzales claimed that she was disabled due to a bulging disc, hypertension, migraines, arthritis, COPD, asthma, sciatica, and degenerative disc disease. Tr. 290. The Social Security Administration denied Gonzales's applications and her motion for reconsideration. Tr. 57, 65, 73, 82. Gonzales then requested a hearing before an Administrative Law Judge (ALJ). Tr. 151.

In April 2025, an ALJ held a hearing, during which Gonzales and a vocational expert testified. Tr. 34–56. In June 2025, the ALJ issued a written decision finding that Gonzales was not disabled. Tr. 15–28. The ALJ's decision became final on April 20, 2026, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Gonzales filed this action on June 11, 2026. Doc. 1. She asserts the following assignments of error:

> 1. The ALJ failed to comply with 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2) or support with substantial evidence her analysis of the medical opinion from treating and examining sources, Kristina Knoll, APRN, Henry McConaha, MD and findings from a Functional Capacity Evaluation resulting in an RFC not based on substantial evidence.
>
> 2. The ALJ's RFC determination is the product of legal error because the ALJ failed to properly evaluate Plaintiff's subjective complaints pursuant to SSR 16-3p and 20 C.F.R. §§ 404.1529, 416.929,

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

> leaving the Court unable to proceed to a substantial evidence review.

Doc. 8, at 2.

**Evidence**

*Personal and vocational evidence*

Gonzales was 48 years old on the alleged disability onset date. Tr. 27. She completed the tenth grade and last worked in 2020 at a nursing home. Tr. 291.

*Medical evidence*

The ALJ summarized the medical evidence as follows:

> The medical evidence demonstrates a history of degenerative arthritis of the lumbar spine (Ex. 2F/364). In January of 2020, the claimant was treated for low back pain and given a referral to pain management. Further, her body mass index (BMI) was noted to be 43.43. The claimant was noted to be interested in a cane but was not using any assistive devices. An examination revealed decreased range of motion of the lumbar spine, paraspinal lumbar tenderness, normal range of motion of the cervical spine, decreased range of motion of the bilateral hips with positive straight leg raises, steady but slow gait, and she was able to heel and toe walk. Additionally, she was referred to physical therapy (Ex. 2F/223-225). The claimant subsequently underwent physical therapy throughout early 2020 (Ex. 2F/199-220). However, by February of 2020, she rated the severity of her pain as four out of 10 and stated that it typically gets to five out of 10. An examination demonstrated tenderness to palpation of the lumbar spine, positive lumbar facet loading pain bilaterally, positive Patrick's test, tenderness to palpation of the bilateral sacroiliac joints, intact sensorimotor function of the lower extremities, and negative straight leg raises bilaterally (Ex. 2F/195-

198). X-rays obtained in September of 2020 revealed multilevel degenerative changes (Ex. 2F/337). In October of 2020, x-rays of the cervical spine revealed degenerative disc disease at the C4-C5 and C5-C6 levels with reduction of the disc spaces and osteophyte formation (Ex. 2F/331). Throughout 2020 and early 2021, the claimant underwent ongoing physical therapy and pain management treatment with radiofrequency ablations and lumbar and cervical medial branch blocks, with noted improvement in pain symptoms (Ex. 2F/95, 97, 104-192). In October of 2021, she complained of constant neck pain and exhibited positive lumbar facet loading pain, as well as decreased sensation of right L3 and L4 dermatome (Ex. 2F/76-80). In November of 2021, the claimant underwent lumbar steroid injections (Ex. 2F/75). In early 2022, the claimant stated that "awhile back she was having issues and using inhaler more, but has since resolved." An examination demonstrated normal pulmonary effort, normal breath sounds, no wheezing, and a normal gait (Ex. 2F/70-71). Treatment records from April of 2023 reveal that the claimant was continued on Robaxin for low back pain and albuterol for breathing. An examination revealed normal breath sounds, no wheezing, and a normal gait (Ex. 2F/26). In May of 2023, an examination revealed a slowed but steady gait and cervical tenderness (Ex. 2F/22). In August of 2023, a review of systems was negative for gait problems. An examination revealed mildly diminished breath sounds with no wheezing and a normal gait (Ex. 2F/19-20).

An examination performed in October of 2023 revealed a normal gait; however, another examination revealed decreased lumbar extension due to pain, decreased sensation to bilateral L3 dermatomes, positive cervical facet loading pain bilaterally, and positive lumbar facet loading pain bilaterally (Ex. 2F/12, 17). In November of 2023, the claimant was treated for COPD with ongoing chest tightness and sputum production; however, she denied dyspnea on exertion, shortness of breath, and difficulty breathing. Her BMI was noted to be 39.44.

A review of systems was positive for back pain but negative for gait problems. Further, it was noted that she was "doing well" with physical therapy (Ex. 2F/8-9). In February of 2024, the claimant reported that her low back pain subsides after taking Ibuprofen. An examination revealed a normal gait and no respiratory distress (Ex. 4F/15-17). In March of 2024, the claimant underwent a consultative medical evaluation performed by Henry McConaha, D.O. The examination revealed normal spinal alignment, no step offs on palpating spinous processes, no spasm, good muscle bulk and conditioning, no paraspinal muscle tenderness, negative straight leg raises, negative Spurling's testing, negative FABER testing, negative Romberg testing, 5/5 motor strength throughout except for mild weakness of right hip flexors with 4/5 motor strength, intact sensation throughout, no difficulty with heel or toe walking, no difficulty with squatting and rising, normal gait and station, normal range of motion of the cervical and lumbar spine, and normal range of motion of the bilateral shoulders and hips (Ex. 3F/2-7). Treatment records from June of 2024 reveal that the claimant underwent lumbar epidural steroid injections and nerve blocks (Ex. 6F/27). A few weeks later, she reported 75 percent relief in her leg. An examination revealed increased pain with lumbar facet loading, increased pain with range of motion of the lumbar spine, and a non-antalgic gait with no use of assistive devices (Ex. 6F/19, 23). In August of 2024, she underwent additional lumbar facet nerve blocks (Ex. 6F/18). Treatment records from September of 2024 noted 90 percent improvement for one week. Additionally, the claimant reported that she was able to sleep better and perform her activities of daily living more efficiently, and that she felt better overall. An examination continued to reveal increased pain with lumbar facet loading, increased pain with range of motion of the lumbar spine, and a non-antalgic gait with no use of assistive devices (Ex. 6F/8-9, 12).

Examinations performed in late 2024 and early 2025 continued to note similar findings. Additional

> medial branch blocks and radiofrequency ablations were recommended (Ex. 8F/5). Pain management records from early February of 2025 noted that the claimant continued to do well in regard to her lower back pain following a lumbar radiofrequency ablation in December. She repeated the procedure. Moreover, an examination revealed 5/5 strength in the lower extremities, no gross loss of sensation to light touch, and an antalgic gait without the use of any assistive devices (Ex. 10F/19, 23-24). A few weeks later, the claimant reported that the pain and burning in her legs was gone following a recent lumbar epidural steroid injection, but that she was now feeling tightness in the back of her right leg. She was started on Gabapentin and biomed cream. The claimant also complained of ongoing neck pain with occasional upper extremity radicular pain. An examination revealed tenderness over the cervical paraspinous muscles, neck pain with decreased range of motion, lumbar tenderness, normal active range of motion of the back with pain, pain on axial loading and rotation bilaterally, full and pain free range of motion of all four extremities, normal sensation, and an antalgic gait without the use of any assistive devices (Ex. 10F/11, 16). Another examination performed in March of 2025 revealed no respiratory distress, no wheezing, and a normal gait (Ex. 9F/8). X-rays of the cervical spine revealed moderate degenerative changes at the C4-C7 levels (Ex. 10F/10). Pain management records from early April of 2025 noted that the claimant's Gabapentin was increased. An examination continued to reveal tenderness over the cervical paraspinous muscles, neck pain with decreased range of motion, lumbar tenderness, normal active range of motion of the back with pain, pain on axial loading and rotation bilaterally, full and pain free range of motion of all four extremities, normal sensation, and an antalgic gait without the use of any assistive devices (Ex. 10F/2, 7).

Tr. 22–24.

*Opinion evidence*

*1. Primary care provider*

In November 2023, Gonzales's primary care provider, Kristina Knoll, APRN-CNP,[2] completed a Medical Source Statement on Gonzales's behalf. Tr. 380–83. Knoll listed Gonzales's symptoms, including: chronic back pain, usually "moderate" but "at times severe"; neck pain; and shoulder pain. Tr. 380. Knoll was asked to list clinical findings and objective signs, and wrote "decreased [range of motion], pain with palpation, [and] slowed gait." Tr. 380. She wrote that Gonzales would need an assistive device. Tr. 380. Knoll indicated that in an eight-hour workday, Gonzales could stand and walk for up to two hours and sit for four hours. Tr. 381. Gonzales would need to change positions at will. Tr. 381. She could frequently lift less than 10 pounds, occasionally lift 10 pounds, and could never lift 20 pounds or more. Tr. 381. Gonzales could rarely twist, stoop, bend, and climb stairs, and she could never crouch or squat. Tr. 381. She had "significant" reaching, handling, and fingering limitations: she was limited to using her hands 20 percent of a workday, manipulating objects with her fingers 50 percent of the workday, and reaching for 10 percent of the workday. Tr. 382. Knoll wrote that Gonzales's symptoms would frequently interfere with her ability to concentrate to perform

---

[2] APRN is an abbreviation for Advanced Practice Registered Nurse. *Advanced Practice Registered Nurse (APRN)*, OhioAPRN.com, http://www.ohioaprn.com/what-is-an-aprn-.html [https://perma.cc/69UR-XX65]. CNP is an abbreviation for Certified Nurse Practitioner. *Id.*

even simple work tasks, and that she could perform "low stress jobs." Tr. 382. Gonzales would be absent more than four days per month. Tr. 383. In support of her opinion, Knoll referenced "attached info," Tr. 383, which includes a medical record listing Gonzales's diagnoses, Tr. 384; an October 2023 functional capacity evaluation completed by a physical therapist, Tr. 385–86; and three pages that someone—presumably Gonzales—completed in which the person was asked to rate and describe pain, Tr. 387–89.

In October 2023, Gonzales saw a physical therapist, who performed the functional capacity evaluation that Kroll referenced. Tr. 385–86. The therapist, whose name is illegible, performed testing on range of motion, strength, grip, mobility, and lifting. Tr. 385–86. The therapist concluded that Gonzales could lift and carry 6 to 10 pounds frequently and 11 to 20 pounds occasionally. Tr. 386. She was "extremely limited" in her ability to bend; "markedly limited" in her ability to push, pull, and perform repetitive foot movements; and "moderately limited" in her ability to reach and handle. Tr. 386.

*2. Consultative exam*

In March 2024, Gonzales saw Henry McConaha, DO, for a consultative exam. Tr. 806–13. Dr. McConaha's extensive exam yielded normal results, other than slightly reduced right-hip flexion. Tr. 808–12. Dr. McConaha opined that Gonzales had no walking, lifting, or carrying limitations. Tr. 812. She "ha[d] limitations" in the ability to sit and stand. Tr. 812. Dr. McConaha

explained that Gonzales could "frequently" sit and stand, but would be "[u]nable to maintain this posture for extended periods due to pain." Tr. 812.

*3. State agency opinions*[3]

In March 2023, Gerald Klyop, MD, reviewed Gonzales's record. Regarding Gonzales's residual functional capacity,[4] Dr. Klyop opined that Gonzales could perform medium exertional level work—stand, walk, and sit for six hours in an eight-hour workday, and lift 50 pounds occasionally and 25 pounds frequently. Tr. 62. She had no postural or manipulative limitations. Tr. 62. In May 2024, Kathy Horava, DO, reviewed Gonzales's record and agreed with Dr. Klyop's opinion. Tr. 79–80.

*Hearing testimony*

Gonzales, who was represented by counsel, and a vocational expert testified at the administrative hearing held in April 2025. At the hearing,

---

3 When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

4 A residual functional capacity, or "RFC," is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

Gonzales:

> testified to ongoing back pain, as well as pain in her right leg. She stated that her pain is improved with heat and medications. Additionally, the claimant reported no side effects from her medications. She testified that she can stand for 30 to 35 minutes at one time; that she can walk for about 15 minutes; that she can sit for half an hour to an hour; and that she can lift about 40 pounds using both arms. Moreover, the claimant testified that she can perform household chores and cleaning tasks but has to take breaks to rest.

Tr. 22.

The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Gonzales could perform work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 51–52. The vocational expert answered that such an individual could perform the following jobs: laundry worker, industrial cleaner, and store laborer. Tr. 52.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024 (Ex. 4D/1).
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); degenerative disc disease of the cervical

and lumbar spine with lumbar radiculitis, spondylosis, and cervicalgia; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), but with the following specific limitations: the claimant can occasionally lift and carry, including upward pulling, 50 pounds; frequently lift and carry, including upward pulling, 25 pounds; stand and walk, with normal breaks, for six hours in an eight-hour workday; sit with normal breaks for six hours in an eight-hour workday; and occasionally use foot controls with the right lower extremity.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was … 48 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

> national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 17–28.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id.* "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*

*v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1. The ALJ erred when she discussed the supportability factor of Kroll's and the physical therapist's opinions*

Gonzales argues that the ALJ erred when she evaluated the medical opinions from Nurse Kroll, Dr. McConaha, and a physical therapist. Doc. 8, at

3. She contends that the ALJ failed to properly evaluate the supportability and consistency factors. *Id.* at 15–18.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a

medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

The ALJ summarized Knoll's opinion and discussed the supportability factor as follows:

> Kristina Knoll, APRN, opined in late 2023 that the claimant can stand and walk for up to two hours total in an eight-hour workday; sit for four hours; occasionally lift and carry up to 10 pounds; never crouch or squat; rarely twist, stoop, and climb; that she would need to shift positions throughout the workday; and that she would be absent from work more than four days per month (Ex. 1F/1-4). This opinion is unpersuasive, as it is not supported with detailed explanation or references to the objective medical evidence (Ex. 1F/1-4).

Tr. 25. Gonzales argues that, contrary to the ALJ's statement, Kroll provided detail to support her opinion when she cited Gonzales's "clinical signs of decreased range of motion, pain with palpation, and slowed gait." Doc. 8, at 15–16. (citing Tr. 380). Moreover, Gonzales points out, Kroll referenced (and attached to her opinion) the physical therapist's functional capacity evaluation, which included objective medical findings. *Id.* (citing Tr. 383); Doc. 10, at 2.

It is true that Kroll referenced and attached to her opinion the physical therapist's functional capacity evaluation, which included objective medical findings. *See* Tr. 383 (Kroll writing "see attached info"); Tr. 385–86 (functional capacity evaluation listed as part of the same exhibit as Kroll's opinion, containing basic objective findings regarding grip strength, range of motion, strength, and mobility); *see also Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546,

553 (6th Cir. 2020) (holding that "a treating physician may adopt or ratify the opinion of a non-treating source by providing a signature" even when the providers "are not part of the same team or practice.").[5] So Kroll did indeed reference objective medical evidence that she intended to lend support for at least part of her opinion.

The ALJ considered the physical therapist's functional capacity evaluation as a separate opinion. The ALJ considered it and the supportability factor as follows:

> An unidentifiable physical therapist opined in October of 2023 that the claimant was markedly limited in pushing and pulling; moderately limited in reaching and handling; and markedly limited in repetitive foot movements (Ex. 1F/7). This statement is unpersuasive, as it is not supported with explanation or references to objective medical evidence.

Tr. 26.[6] But the physical therapist, in the two-page opinion, noted testing results that showed that Gonzales had non-functional range of motion in her lumbar spine and right arm; non-functional strength in her right leg; and non-functioning mobility in forward flexion and repetitive foot and balancing

---

[5] Although Kroll didn't sign the physical therapist's opinion and pass it off as her own, as was the case in *Hargett*, Kroll signed her own opinion and expressly referenced attachments to her opinion, including the physical therapist's functional capacity evaluation. Tr. 380. This is enough to show that Kroll intended to rely on the physical therapist's functional capacity evaluation.

[6] A physical therapist signed the opinion, but the signature is illegible. Tr. 386.

movements. Tr. 385. These objective findings would lend support for limits on pushing, pulling, reaching, and repetitive foot movements. So the ALJ's statement that the therapist's opinion isn't supported by references to objective evidence is not accurate.

Moreover, to say that the therapist's opinion isn't "supported with explanation" isn't entirely accurate either. The therapist's testing report explains the therapist's opinion. For instance, the therapist found that Gonzales's lumbar range of motion was not functional; her forward-flexion mobility was not functional; and the therapist stated that Gonzales would be "extremely limited" in bending. Tr. 385–86. It's not clear what further explanation for the bending limitation the ALJ expected. To be sure, the ALJ may find the therapist's opinion to be unsupported for various other or more specific reasons, but the ALJ didn't cite other reasons or offer a more detailed explanation. She only said that the therapist's opinion was "not supported with explanation or references to objective medical evidence," which is not, on its face, accurate.

In short, the ALJ failed to adequately explain the supportability factor when she evaluated the opinions from Kroll and the physical therapist.[7]

---

[7] Gonzales's challenge to the ALJ's evaluation of the consistency factor as applied to Kroll's opinion fails. Doc. 8, at 15–18. Other than reciting evidence that she believes would yield a different outcome, *id.*, Gonzales has not shown that the ALJ's consistency evaluation was faulty. *See e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported

Next, Gonzales argues that the ALJ erred when she discussed the supportability factor of Dr. McConaha's opinion. Doc. 8, at 17. The ALJ discussed and evaluated Dr. McConaha's opinion as follows:

> Dr. McConaha, the consultative medical examiner, opined that the claimant could frequently sit and stand, and was unable to maintain these postures for extended periods due to pain (Ex. 3F/7). This opinion is unpersuasive. Although it is supported by the findings of Dr. McConaha's own evaluation, Dr. McConaha only examined the claimant on one occasion (Ex. 3F/2-7). Further, this assessment is vague and of limited probative value in assessing the claimant's specific functional limitations....

Tr. 26.

Gonzales argues that the ALJ's finding that the opinion was "vague" is insufficient. Doc. 8, at 17. But *vagueness* is an appropriate supportability reason. *See Woodard v. Comm'r of Soc. Sec. Admin.*, No. 5:22-cv-1728, 2023 WL 6005004, at *10 (N.D. Ohio July 27, 2023) ("Opinions that express functional limitations in vague terms can be discounted as not describing any functional limitations at all.") (citing *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 431 (6th Cir. 2018)), *report and recommendation adopted*, 2023 WL 5842016 (N.D. Ohio Sept. 11, 2023); *see Baker v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-01988, 2024 WL 3091042, at *10 (N.D. Ohio June 21, 2024). And Dr. McConaha's finding that Gonzales "could frequently sit and stand" but

---

an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.").

could not maintain these positions "for extended periods due to pain," Tr. 812, is, as the ALJ said, vague, Tr. 26. This was not error.

2. *The ALJ did not err when evaluating Gonzales's subjective reports*

Gonzales also challenges the ALJ evaluation of her subjective reports of pain and limitations. Doc. 8, at 18–22. The ALJ summarized Gonzales's allegations, Tr. 22, detailed the medical history, Tr. 22–24, and explained her conclusion regarding what she believed Gonzales could do, Tr. 24. The ALJ wrote:

> Overall, a finding that the claimant is capable of performing medium work with occasional use of foot controls with the right lower extremity is supported by recent reports of tightness in the right leg. However, the claimant also recently reported that the pain and burning symptoms in her leg resolved following a lumbar steroid injection. Although the claimant has consistently exhibited cervical and lumbar pain with tenderness and reduced range of motion, only ongoing conservative treatment has been recommended. Moreover, she has reported improvement and effectiveness with these treatments and has also consistently exhibited 5/5 strength with no need for an assistive device. Accordingly, these findings support the ability to perform a range of medium work.

Tr. 24. Gonzales argues that the ALJ "only addressed [Gonzales's] physical allegations in relation to the objective evidence of record," which, Gonzales asserts, is insufficient. Doc. 8, at 20. But the ALJ did not only cite objective evidence showing that Gonzales consistently exhibited full strength. The ALJ also cited Gonzales's conservative treatment and Gonzales's reports that the

treatment was effective. The ALJ did not err when she evaluated Gonzales's subjective reports.

**Conclusion**

For the reasons explained above, I recommend that the Court find that the ALJ erred when she evaluated the opinions of Kroll and the physical therapist, and reverse and remand the Commissioner's decision.

Dated: November 23, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).